# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| ADAM LEE WILLIAMS, et al., ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No.  3:09-CV-509 |
| ) | (Phillips) |
| WAL-MART STORES EAST, L.P., ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

Lindsey Williams was an employee of Wal-Mart.  In the early morning hours of July 4, 2009, after working a partial night shift at the Wal-Mart store in Sevierville, Williams left the store in her car.  Thereafter, Williams was involved in a single car accident which took her life.  Plaintiffs filed the instant action alleging wrongful death proximately caused by the negligence of Wal-Mart for failure to exercise reasonable care for the safety of Williams and allowing her to leave the Wal-Mart premises when she was in need of medical care.  Before the court is the motion for summary judgment filed by Wal-Mart. Because Wal-Mart did not owe Williams any duty under the undisputed facts of this case, and Wal-Mart's actions were not the cause of her death, Wal-Mart's motion for summary judgment will be granted and this action dismissed.

## Statement of Facts

Lindsey Williams was employed by the Wal-Mart store in Sevierville, Tennessee. She worked the night shift, which began at 10:00 p.m. and ended at 7:00 a.m. Prior to July 3, Williams had not worked the night shift for the preceding two days. On the morning of July 3, 2009, Wal-Mart Assistant Manager Denise Cox called Williams and left her a voicemail asking her if she was available to work that evening beginning at 10:00 p.m. At approximately 8:00 p.m., Williams returned Cox's telephone call and stated that she was available to work at 10:00 that evening.

Williams reported to the 10:00 p.m. employee meeting on July 3, 2009, immediately prior to beginning her shift and neither Cox nor Assistant Manager Karen Reading noted Williams acting in any way that would give cause for concern.

Plaintiffs have submitted the affidavit of Diane Justus, a Wal-Mart employee who was working on the night of July 3, in the Toy Department. According to Justus, Williams was sitting on the floor with her legs sticking straight out. Her head was touching the floor as she leaned forward. She remained in this position for about fifteen minutes and did not move during that time. Justus became concerned for Williams and left her department to check on her. Upon reaching Williams, Justus touched her on the shoulder asking "Are you okay?" Justus stated that Williams did not respond to her touch or statement for several seconds. Eventually, Williams raised her head and Justus noted that Williams had glazed, glassy and red eyes, appeared disoriented, and did not respond to

her question verbally.  Justus felt that Williams needed medical attention and summoned Reading.

Assistant Manager Karen Reading submitted an affidavit stating that at approximately 12:40 a.m. on July 4, she received a report from another employee that Williams was asleep on the floor in the Health and Beauty Department, where Williams was assigned to work for the evening.  When Reading first observed Williams, it appeared that Williams was awake and working as normal.  After watching Williams for several minutes, Reading called Cox over to observe Williams.  While waiting for Cox, Reading observed Williams carrying boxes of product, walking the boxes to the proper location, cutting the boxes open, and stocking the shelves.  Reading noted that Williams was completing her job tasks, but Williams appeared to be moving a little slowly and appeared to be tired.

Reading approached Williams and asked her to accompany her and Cox to an office located at the back of the store to discuss the report that she had been asleep on the job.  The Health and Beauty Department is located at the front of the store and the office where the meeting was to take place is located at the back of the store.  During the walk to the back of the store, Williams walked under her own volition and control.

Upon arrival at the office at the back of the store, the door was shut, and the only participants in the meeting were Reading, Cox and Williams.  Williams denied falling asleep and stated that her mouth was hurting and that she placed her head between her legs while seated on the floor stocking merchandise because this relieved the pain in her

3

mouth. Williams also stated that she had not been sleeping well because of her mouth pain and that she was tired. It was agreed by Reeding, Cox and Williams that Williams would go home for the evening. Williams was asked if she was okay to drive home or if she wanted Wal-Mart to call her husband or anyone else to pick her up at the store. Williams responded that she was feeling fine to drive home and that she did not want to call her husband or anyone else to pick her up. Cox and Reading stated that Williams appeared to be lucid, alert and attentive and was able to answer every question asked of her. Williams did not appear to be in need of any immediate medical attention nor did she request any medical attention.

Williams clocked out of work at Wal-mart on July 4, 2009 at approximately 2:07 a.m. and left the premises. Thereafter, Williams was involved in a single car accident and was killed. Plaintiffs filed the instant action on October 28, 2009, in the Circuit Court for Sevier County, Tennessee. Defendants removed the case to this court. Plaintiffs allege that "This wrongful death arose . . . as a result of a traffic crash proximately caused by the negligence of . . . Wal-Mart when they failed to exercise reasonable care for the safety of Williams and allowed her to leave Wal-Mart premises when she was visibly disoriented, ill and in need of medical care."

Wal-Mart has moved for summary judgment on plaintiffs' claims asserting that (1) Wal-Mart did not owe Williams a duty of care, and (2) plaintiffs cannot show that any action or inaction of Wal-Mart was the cause of Williams' death.

## **Summary Judgment Standard**

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

## Analysis

I. Wal-Mart did not Owe Williams a Duty of Care

In order to prevail on a negligence claim, plaintiffs must show (1) a duty of care owed by defendant to plaintiff, (2) conduct below the applicable standard of care that amounts to a breach of that duty, (3) an injury or loss, (4) cause in fact, and (5) proximate or legal cause. *Lett v. Collins Foods, Inc.,* 60 S.W.3d 95, 99 (Tenn.App. 2001) (quoting *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)).

To establish a duty, a plaintiff must show that there exists a "legal obligation owed by defendant to plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Id.* A risk of harm is unreasonable "if the foreseeable probability and gravity of harm posed by defendant's conduct outweigh the burden upon defendant to engage in alternative conduct that would have prevented the harm." *Id.* In making this determination, several factors are important: (1) the foreseeable probability of the harm or injury occurring; (2) the possible magnitude of the potential harm or injury; (3) the importance or social value of the activity engaged in by the defendant; (4) the usefulness of the conduct to the defendant; and (5) the feasibility, relative usefulness, relative safety, and relative costs and burdens, of an alternative, safer course of conduct. *Id.* The question of whether one person owes a duty to another is a question of law to be decided by the court. *Id.*

Wal-Mart asserts that it did not owe Williams any duty of care under the facts of this case. In support of its assertion, Wal-Mart relies on the holding of the Tennessee Court of Appeals in *Lett v. Collins Foods, Inc.,* 60 S.W.3d 95. In *Lett*, the defendant's employee reported to work in an intoxicated state. *Lett*, 60 S.W.3d at 97. The defendant's manager testified that the employee smelled of alcoholic beverages, her speech was slurred and she was staggering. *Id.* The employee attempted to work, but was eventually allowed to go to the back of the restaurant to sleep. *Id. at 97-98.* After sleeping for approximately 45 minutes, the employee wanted to leave the employer's premises but the manager would not let her leave because "she was too messed up to drive." The manager offered to take the intoxicated employee home, but the employee refused. *Id.* The employee left her employer's business in her own car and was involved in a car accident which injured the plaintiff. *Id.* The injured plaintiff sued the employer alleging that the employer was negligent in allowing the intoxicated employee to leave the employer's premises. *Id.* at 99. "Implicit in this argument is the contention that the employer had a duty to prevent the employee from driving home from work in an intoxicated state." *Id.*

The Tennessee Court of Appeals affirmed the grant of summary judgment in favor of the employer. The court of appeals noted that "A crucial question is whether the employer had the means or ability to control the conduct. If it did not have the means or ability to control the conduct in question, then the employer had no duty to control same, and it cannot be held to be negligent for failing to do so." *Id.* at 100.

The plaintiff in *Lett* argued that the employer assumed a duty by virtue of the employer/employee relationship and by affirmatively taking control of the intoxicated employee when she reported to work. *Id.* at 102. The plaintiff alleged that this duty continued until the end of the employee's shift and extended to include ensuring that the employee did not leave the employer's business in an impaired state. *Id.* The court of appeals found this argument to be without merit, stating:

> The facts of the instant case likewise do not present affirmative acts sufficient to impose a duty upon [the employer] to control the conduct of [the employee], who was off-premises and off-duty as well. She arrived at work intoxicated, and [the employer] did not contribute to, condone, or seek to accommodate, her intoxication. It did not require her to drive home; in fact, it attempted to find her safe passage home, but she refused. In sum, the employer did not provide her mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive. In effect, the employer did no more than acquiesce in [her] determination to drive her own car.

*Id.* at 103. The court of appeals went further, stating that the employer did "absolutely nothing" to contribute to the employee's state of intoxication or her decision to drive herself home. The court opined:

> [The employer] had no legal right to tie her up, or "sit on her" or otherwise prevent her from driving away in her own car. From a legal standpoint, it did not have the means or the ability to control its employee when she made the decision to drive a vehicle in her condition. The employer certainly was under no obligation to allow [the employee] to stay "on the clock" or to stay on its premises when she was too inebriated to work. The employer's passive acquiescence in her leaving the premises and driving away in her own vehicle, acts they had no legal right to prevent, is simply not enough to impose a duty on this employer who was totally blameless in the condition – [the employee's] intoxicated state – that led to the accident and the plaintiff's injuries.

8

*Id.* at 105. *See also Riddle v. Arizona Oncology Servs. Inc.,* 924 P.2d 468 (Ariz.Ct.App. 1996) (finding no duty where supervisor ordered the employee to leave the defendant's premises prior to the end of her shift; employer did not order or require the employee to drive; and the employee's intoxication was not caused, contributed to, or condoned by the employer); *Howard v. Delco Div. of General Motors Corp. Inc.,* 534 N.E.2d 936 (Ohio Ct.App. 1987) (holding that employer did not have duty to protect allegedly intoxicated employee from risk that employee would have automobile accident after leaving work).

As the Tennessee Court of Appeals found in *Lett,* this court likewise finds that Wal-Mart had no duty to prevent Williams from driving home in her own vehicle. It is undisputed that Wal-Mart did not contribute to, participate in, or seek to accommodate Williams alleged impairment. It is also undisputed that Wal-Mart offered to call someone to pick up Williams at the store, but she refused and stated that she was okay to drive herself home. As the *Lett* court stated, "any desire to help [the employee] get home safely was thwarted by [the employee's] determination to drive herself." *Id.* at 105.

In their response to Wal-Mart's motion for summary judgment, plaintiffs have submitted the deposition testimony of Ulises Correa, the market-manager for seven Wal-Mart stores. In response to a question about whether Wal-Mart had a duty to its employees if they became ill or incapacitated while on the job, Correa responded that they did, and that they would do everything in their power to help, to provide assistance. Correa defined "incapacitated" to mean a person that is "nonresponsive."

If in fact, Wal-Mart owed Williams any duty to provide assistance, that duty was discharged by the actions of Reading and Cox, who inquired about her condition and offered to provide assistance in helping her get home, which Williams declined. Williams left the store under her own power. Wal-Mart had no legal right to prevent her from leaving.

Plaintiffs have attempted to create issues of fact with regard to Williams' physical condition and with regard to the timeline of events (whether Reading and Cox talked to Williams in the office for ten minutes or forty-five minutes). However, regardless of whether Williams was medically impaired or simply tired, and regardless of the length of time that her managers spoke to her before she left the premises, Wal-Mart did not owe a duty to prevent Williams from leaving the store. Plaintiffs have failed to cite any case law contrary to the decision of the Tennessee Court of Appeals in *Lett*.

The undisputed material facts show that Williams stated that she was tired and not sleeping because of her mouth problems and her family problems, not due to any action or inaction on the part of Wal-Mart. Wal-Mart did not require Williams to drive home; in fact, it is undisputed that Wal-Mart offered to call someone to pick her up, but she refused and stated that she was okay to drive home. Wal-Mart did not provide Williams mobility she otherwise did not have; it did not encourage her to drive home; and it did not contribute to the condition that made it unsafe for her to drive. The court finds, as a matter of law, that Wal-Mart did not have the means or ability to prevent Williams from leaving the store in her own vehicle on July 4, and therefore, Wal-Mart owed Williams no duty to take such action.

II. Wal-Mart's Actions were not the Cause of Williams' Death

Plaintiffs' claims also fail because it cannot be shown that Wal-Mart's action or inaction was the cause in fact and proximate or legal cause of Williams' death. Here, it is undisputed that Williams was killed in a single car accident. There were no witnesses to the accident, and plaintiffs have presented no evidence as to the cause of the accident, much less that any action or inaction of Wal-Mart caused the accident. Absent any evidence regarding the cause of the accident, plaintiffs' claims are purely speculative. Therefore, the court finds that plaintiffs cannot prove the element of causation.

**Conclusion**

Because Wal-Mart did not owe Williams a duty to prevent her from leaving the premises under her own volition and control, Wal-Mart is entitled to summary judgment on plaintiff's claims. Defendant Wal-Mart's motion for summary judgment [Doc. 13] is **GRANTED**, and this action is **DISMISSED IN ITS ENTIRETY**. The final pretrial conference scheduled for October 4, 2011 and the trial scheduled for October 11, 2011 are **CANCELLED.**

**ENTER:**

    s/ Thomas W. Phillips
United States District Judge